UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAEL S. WALKER,

                              **Plaintiff,**

   vs.                                                    5:22-CV-1088
                                                              (MAD/ATB)

SGT. THIBAULT and SGT. MCCALEB,

                              **Defendants.**
_____

APPEARANCES:                                            OF COUNSEL:

MICHAEL S. WALKER
4975 Surrey Lane
Liverpool, New York 13088
Plaintiff *pro se*

MURPHY BURNS LLP                            THOMAS K. MURPHY, ESQ.
407 Albany Shaker Road
Loudonville, New York 12211
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff commenced this action in Onondaga County Supreme Court on September 27, 2022, pursuant to 42 U.S.C. § 1983, alleging that he was subjected to excessive force during a traffic stop in violation of his constitutional rights. The case was removed to this Court on October 20, 2022. *See* Dkt. No. 1. Plaintiff filed an amended complaint on January 5, 2023, which is the operative pleading in this matter. *See* Dkt. No. 16.

      Currently before the Court is Defendants' motion for summary judgment. *See* Dkt. No. 30.

### II. BACKGROUND

On September 12, 2022, at approximately 9:30 p.m., Village of Baldwinsville Police Sergeant Robert Thibault ("Defendant Thibault") was parked in his marked patrol unit when he observed a grey Honda traveling toward his location that was tailgating another vehicle and that had only one working headlight. *See* Dkt. No. 30-9 at ¶ 1.[1] At the time, Defendant Thibault did not know the operator of the grey Honda but now knows that person to be Plaintiff. *See id.* at ¶ 2. As Plaintiff and the other vehicle approached Defendant Thibault's location, Plaintiff made an illegal pass to the left of the other vehicle utilizing the turn only center lane. *See id.* at ¶ 3.

In his deposition, Plaintiff testified that when he was observed by Defendant Thibault, he was making a delivery in his position as a driver for GrubHub. *See* Dkt. No. 30-5 at 7-12. Plaintiff testified that he was driving his vehicle through the village when he came upon another vehicle that was traveling under the posted speed limit, which prompted him to use the turning lane to pass the vehicle. *See* Dkt. No. 30-9 at ¶ 6. Plaintiff knew at the time that he had a "busted headlight" and had a replacement that he had not yet installed, and further admitted that he was "having trouble seeing on the road." *Id.* at ¶ 7.

---

[1] The Court notes that Plaintiff has not filed a response to Defendants' statement of material facts. Instead, he has filed a nineteen page document in which he alternates between claiming that Defendants violated his rights and quoting scripture and other historical documents. *See* Dkt. No. 33. Where, as in this case, a party has failed to respond to the movant's statement of material facts in the manner required under Local Rule 56.1(b) (formerly Local Rule 7.1(a)(3)), the facts in the movant's statement will be accepted as true (1) to the extent they are supported by evidence in the record, and (2) the nonmovant, if proceeding *pro se*, has been specifically advised of the possible consequences of failing to respond to the motion. *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Here, Defendants provided Plaintiff with the Northern District of New York's standard notification of the consequences of failing to respond to a summary judgment motion. *See* Dkt. No. 30-1. Accordingly, to the extent that the facts set forth in Defendants' statement of material facts are supported by the record, they will be accepted as true. While "not required to consider what the parties fail to point out," in deference to Plaintiff's *pro se* status and out of an abundance of caution, the Court has nevertheless conducted "an assiduous review of the record" to determine whether there is evidence that might support Plaintiff's claims. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001).

After Plaintiff passed Defendant Thibault's location and after Defendant Thibault observed Plaintiff commit the above traffic violations, Defendant Thibault pulled out and followed Plaintiff's vehicle. *See id.* at ¶ 8. After Plaintiff turned left on Oswego Street, Defendant Thibault activated his emergency lights to conduct a traffic stop of Plaintiff's vehicle. *See id.* at ¶ 9. At this time, Plaintiff did not yield to Defendant Thibault's emergency lights and pull over to the side of the road, and instead kept driving. *See id.* at ¶ 10. As Plaintiff continued driving, Defendant Thibault, in addition to his emergency lights, activated his siren. *See id.* at ¶ 11. In his deposition, Plaintiff testified that he was aware that he was being followed by law enforcement and that he saw the emergency lights and heard the siren. *See* Dkt. No. 30-5 at 14-15. Plaintiff acknowledged that he was supposed to pull over to the side of the road, but he made the decision to continue driving because he needed to "complete my task" and he was "right in the middle of worship." *Id.* Plaintiff further testified that he chose not to pull over because he was honoring his religious beliefs because "my religion is more important to me than my relationship with other human beings besides Jesus." *Id.* at 18.

While Defendant Thibault was pursuing Plaintiff's vehicle, Defendant McCaleb arrived on scene and followed Defendant Thibault's vehicle and all three vehicles eventually ended up in front of 433 Tuscany Lane. *See* Dkt. No. 30-9 at ¶ 15. Defendant Thibault parked his patrol vehicle behind Plaintiff's vehicle and Defendant McCaleb stopped his patrol vehicle to the left and Defendant Thibault's and both officers got out and approached Plaintiff's vehicle. *See id.* at ¶ 16. While Plaintiff was seated in his vehicle, Defendant McCaleb gave a loud verbal command to Plaintiff to show his hands and Defendant Thibault, when he arrived at the driver's door, ordered

3

Plaintiff out of the vehicle. *See id.* at ¶ 17.[2] Plaintiff did not show the officers his hands and did not get out of the vehicle and instead leaned over and started to grab something from the passenger area of the vehicle. *See id.* at ¶ 18.

In his deposition, Plaintiff testified that he had no intention of stopping his vehicle and had no intention of speaking to the police until after he arrived at his customer's home and delivered their food. *See id.* at ¶ 19; *see also* Dkt. No. 30-5 at 23-25 (testifying that his intention was to complete the delivery, "turn my app off and then the police can have my undivided attention"). Plaintiff further testified that after he came to a stop and was seated in his vehicle, he began reaching over trying to get his phone and food while at the same time he heard the police officers "shouting at me," including the command to "get out of the vehicle." Dkt. No. 30-5 at 25-27.

After Plaintiff refused the officers orders to show his hands and get out of the vehicle, Defendant McCaleb grabbed Plaintiff's left arm while Defendant Thibault grabbed Plaintiff's legs and together the officers pulled Plaintiff out of the vehicle and onto the pavement. *See* Dkt. No. 30-9 at ¶ 24. Plaintiff was on his side on the pavement and was struggling with the officers who were trying to take him into custody. *See id.* at ¶ 25. Defendants repeatedly ordered Plaintiff to stop resisting, put his hands behind his back, and comply with their orders, which Plaintiff failed to do. *See id.* at ¶ 26. Plaintiff was face down on the pavement with Defendant Thibault holding down his legs and Defendant McCaleb straddling across his back attempting to get Plaintiff's arms behind him in order to place him in handcuffs, but Plaintiff was resisting and struggling against the officers attempts to do so. *See id.* at ¶ 27. In addition to struggling against the

---

[2] In support of their motion for summary judgment, Defendants included the dashcam videos from both patrol vehicles, as well as Defendant McCaleb's body-worn camera video. *See* Dkt. No. 30-7.

officers, Plaintiff tucked his hands underneath his chest in an attempt to prevent Defendant McCaleb from applying handcuffs and contrary to Defendant McCaleb's orders to give the officer his hands to be handcuffed. *See id.* at ¶ 28. Defendant McCaleb used a compliance technique applying pressure to a point on Plaintiff's face using his hand and forearm which caused Plaintiff to bring his right arm out from under his chest into a pushup position thereby enabling Defendant McCaleb to grab hold of Plaintiff's right arm and eventually place it in a handcuff. *See id.* at ¶ 29. Defendant McCaleb, similarly, was then able to grab Plaintiff's left arm and secure it in the handcuffs. *See id.*

During his deposition, Plaintiff testified that he was told by the officers that he was "resisting arrest" while he was on the ground, but he was telling the officers "I am trying to practice my religious beliefs. I am trying to make a delivery." Dkt. No. 30-5 at 30. Plaintiff further testified that he knew the officers were yelling for him to get to the ground, he did not do so because he wanted to "practice my religious beliefs and complete my worship," which involved making the food delivery. *See id.* at 30-31. Plaintiff admitted that while the officers were trying to force him down onto the pavement, he was resisting that effort and trying to get up to complete his food delivery. *See id.* at 31. Plaintiff further testified that he was holding his arms underneath his body rather than giving them to the officers to be handcuffed and acknowledged that this was done in an attempt to resist being arrested. *See id.* at 33-34.

Once the officers gained control of Plaintiff and placed him in handcuffs, he was raised to a standing position and placed in a patrol vehicle for transport to the police station. *See* Dkt. No. 30-9 at ¶ 36. As a result of the incident, Plaintiff was charged with violations of the following sections of the Vehicle and Traffic Law: (1) Section 3752(a)(1) inadequate headlights; (2) Section 1126(a) driving left of pavement markings; (3) Section 1144(a) failure to yield right of way to an

emergency vehicle; and (4) Section 1129(a) following too closely. *See id.* at ¶ 37. Plaintiff was convicted after trial of all four traffic violations in Baldwinsville Village Court. *See id.* at ¶ 38. Plaintiff received the court notice setting his total fine including surcharge for the four convictions at $724.00 and returned it to the Baldwinsville Village Court having written on the same that it was unconstitutional and violated his First and Eighth Amendment rights. *See id.* at ¶ 39.

### III. DISCUSSION

**A.    Standard of Review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted). Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986). In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson*, 477 U.S. at 255) (other citations omitted). Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in dispute. *See Anderson*, 477 U.S. at 258.

The moving party bears the initial burden of establishing that there is no genuine issue of material fact to be decided. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to any issue on which the moving party does not bear the burden of proof, it may meet its burden

on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case. *See id.* at 325. Once the movant meets this initial burden, the nonmoving party must demonstrate that there is a genuine unresolved issue for trial. *See* Fed. R. Civ. P. 56(e). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has held that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). "However, this does not mean that a *pro se* litigant is excused from following the procedural requirements of summary judgment." *Kotler v. Fischer*, No. 9:09-CV-01443, 2012 WL 929823, *12 (N.D.N.Y. Mar. 19, 2012) (citations omitted). Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Cary v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

**B.   Excessive Force**

In his amended complaint, Plaintiff alleges that he was subjected to excessive force when Defendants Thibault and McCaleb removed him from his vehicle onto the ground and placed him in handcuffs.

"The Fourth Amendment prohibits the use of excessive force in making an arrest, and whether the force used is excessive is to be analyzed under that Amendment's 'reasonableness

7

standard.'" *Outlaw v. City of Hartford*, 884 F.3d 351, 366 (2d Cir. 2018) (quoting *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015)). The reasonableness determination must include consideration of the fact that law enforcement officers often are forced to make quick decisions under stressful and rapidly evolving circumstances rendering the calculation of what amount of force is reasonable difficult. *See Graham v. Connor*, 490 U.S. 386, 396-97 (1989). Relevant factors include the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether the suspect was actively resisting arrest. *See Brown*, 798 F.3d at 100 (citing *Graham*, 490 U.S. at 396). As to the third factor, "[t]he fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of *some* degree of force, but it does not give the officer license to use force without limit. The force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." *Sullivan v. Gagnier*, 225 F.3d 161, 165-66 (2d Cir. 2000) (emphasis in original). Further, "'reasonable force does not become unconstitutional merely because it caused the plaintiff serious injury.'" *Otero v. Town of Southampton*, 194 F. Supp. 2d 167, 180 (E.D.N.Y. 2002) (quoting *Gonzalez v. City of New York*, No. 98-CV-3084, 2000 WL 516682, *4 (E.D.N.Y. Mar. 7, 2000)), *aff'd*, 59 Fed. Appx. 409 (2d Cir. 2003). Moreover, to support an excessive force claim, the plaintiff must establish that the defendant used more than *de minimis* force. *See Feliciano v. Thomann*, 747 Fed. Appx. 885, 887 (2d Cir. 2019).

     In the present matter, as set forth in more detail above, Defendant Thibault was sitting in his patrol unit at approximately 9:30 p.m. when he observed Plaintiff's vehicle, which only had one working headlight, illegally pass another vehicle using the middle turning lane and proceed away from his location. Defendant Thibault followed Plaintiff's vehicle intending to make a

traffic stop. Defendant Thibault activated his emergency lights, but Plaintiff failed to comply and pull over to the side of the road. Instead, Plaintiff kept driving for several minutes, turning down numerous streets.

Once Plaintiff stopped his vehicle in a residential neighborhood, Defendants pulled up behind and beside Plaintiff's vehicle and got out. It is widely recognized that traffic stops present a heightened risk to the safety of police officers when they are approaching a motorist seated in his or her vehicle. *See Michigan v. Long*, 463 U.S. 1032, 1047 (1983); *Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977). Given the unusual events that had thus far transpired and the uncertainties and unknown possible risks to Defendants as they approached Plaintiff, Defendants had every right to protect themselves by taking control of the situation. Defendants shouted orders to Plaintiff to show his hands and to get out of the vehicle. Plaintiff failed to comply with those orders and instead reached over into the passenger seat area of the vehicle. At this point, it was objectively reasonable for the officers to forcibly remove Plaintiff from his vehicle.

As depicted in the videos attached to Defendants' motion, Defendant McCaleb takes hold of Plaintiff's upper body while Defendant Thibault grabs his legs, and they pull him out onto the road surface. *See* Dkt. No. 30-7. Defendants then engage in efforts to get Plaintiff over onto his stomach so that they may pull his hands behind his back and place him in handcuffs. As is seen in the video and as detailed in their affidavits, Defendants employed their training and use of force tactics to accomplish this. Defendant Thibault crossed Plaintiff's legs and then kneeled on the same so that Plaintiff could not easily get back up off the ground. Because Plaintiff would not voluntarily give Defendant McCaleb his hands for handcuffing, and instead held them underneath his body, Defendant McCaleb was forced to use a tactic intended to compel Plaintiff to bring his

9

arms out. As shown on the videos, the technique worked and Defendant McCaleb was able to then grab Plaintiff's right and left arms and place him in handcuffs.

An objective viewing of the video demonstrates that Plaintiff was actively resisting Defendants' efforts to get him out of the vehicle, get him on the ground, and gain custody of him by placing him in handcuffs. In his deposition, Plaintiff admits that he was in the throws of a personal religious experience that was compelling him to complete a food delivery and not cooperate with the police. He testified that the reason he did not stop when Defendant Thibault activated his emergency lights was because he believed he was properly exercising his religious rights. Plaintiff testified that he attempted to pull away from Defendants to get up off the ground, to get to the food in his car, and deliver the food in order to complete his act "of worship."

Moreover, a review of the video reveals that Plaintiff was not punched, kicked, beaten, or struck in any manner by Defendants. Once Plaintiff was in custody, he was subjected to no further force. Rather, once in custody, Plaintiff was placed in the patrol vehicle, and the audio demonstrates that Defendants were respectful to Plaintiff and conducted themselves in a professional manner (even when Plaintiff told the officers that his name was "Lucifer").[3]

Based on the foregoing, the Court finds that the force used by Defendants was necessary, reasonable, and proper under the circumstances, and Plaintiff's Fourth Amendment excessive force claim must be dismissed.

**C.     The Traffic Stop**

---

[3] In fact, after Plaintiff was in custody, Defendant Thibault confirmed with Plaintiff that he worked for GrubHub and that he was supposed to be deliver the food in his vehicle to the residents at 433 Tuscany Lane. *See* Dkt. No. 30-3 at ¶ 16. Defendant Thibault then completed the food delivery for Plaintiff. *See id.*

10

Liberally construed, Plaintiff's amended complaint alleges that he was subjected to an illegal traffic stop. *See* Dkt. No. 16 at 3.

The Fourth Amendment protects the "right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. Const. amend. IV.  This protection extends to vehicle stops. *See Whren v. United States*, 517 U.S. 806, 809-10 (1996).  "'[T]he Fourth Amendment requires that an officer making a traffic stop have probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity.'" *United States v. Wilson*, 699 F.3d 235, 242 (2d Cir. 2012) (quotation omitted).  "Probable cause to make a stop exists when an officer 'has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the [suspect] has committed or is committing a crime.'" *Id.* (quoting *United States v. Delossantos*, 536 F.3d 155, 158-59 (2d Cir. 2008)).

In the present matter, on the night at issue, the undisputed facts demonstrate that Plaintiff was operating his motor with one broken headlight, while tailgating another vehicle, which he then illegally passed, and finally failed to pull over once he became aware that Defendant Thibault activated his emergency lights and siren.  Plaintiff was subsequently charged with four violations of the Vehicle and Traffic Law and was found guilty over those charges at trial.  Upon his conviction, probable cause for those traffic citations was established as a matter of law.  *See Carruthers v. Colton*, No. 6:20-cv-399, 2021 WL 5585798, *3 (N.D.N.Y. Nov. 29, 2021) ("'Probable cause for [a traffic] stop is established as a matter of law when the driver pleads guilty to a traffic violation, and neither the passenger [n]or the driver can thereafter bring a claim of false arrest'") (quotation omitted); *see also Annan v. City of New York Police Dep't*, No. 12-cv-2702, 2014 WL 10416919, *13 (E.D.N.Y. Sept. 9, 2014) (citations omitted).

11

Because Plaintiff was found guilty at trial of the traffic violations, the Court finds that there was probable cause for the stop and grants Defendants' motion for summary judgment on this claim.

D.  **Vehicle Search**

Without providing any relevant facts, Plaintiff alleges that Defendants illegally searched his vehicle upon his arrest.  *See* Dkt. No. 16 at 3.

"An officer is entitled to conduct a search of a vehicle incident to arrest to satisfy both security and evidentiary concerns, whether the suspect was arrested in or next to the vehicle." *Lyman v. City of Albany*, 597 F. Supp. 2d 301, 306 (N.D.N.Y. 2009) (citing *United States v. Thornton*, 541 U.S. 615, 620-21 (2004)).  "Therefore, 'so long as an arrestee is the sort of "recent occupant" of a vehicle ... officers may search that vehicle incident to the arrest.'" *Id.* (quoting *Thornton*, 541 U.S. at 623-24).

In the present matter, the undisputed facts establish that Plaintiff's vehicle was searched upon his lawful arrest and prior to the vehicle being towed.  *See* Dkt. No. 30-10 at ¶ 18; Dkt. No. 30-4 at ¶ 15.  This was a permissible inventory search and, therefore, this claim must be dismissed.

E.  **Freedom of Religion**

Plaintiff appears to be attempting to allege that his arrest violated his religious freedoms protected by the First Amendment.  Indeed, Plaintiff's complaint, deposition transcript, and his submissions in response to Defendants' motion for summary judgment are riddled with references to religious scripture and he makes passing reference to the First Amendment.

To the extent that Plaintiff is alleging that his arrest and subsequent prosecution violated his right to religious exercise, the claim must be dismissed pursuant to *Heck v. Humphrey*, 512

U.S. 477 (1994) because he was convicted of the charges brought against him and any judgment in his favor would necessarily call into question the validity of his convictions. Alternatively, the claim is subject to dismissal because Plaintiff has failed to put forth any evidence (or even allegations) that he was selectively prosecuted because of his religious beliefs or that the statutes he was charged with violating somehow imposed a substantial burden on his religious beliefs. *See United States v. Manneh*, 645 F. Supp. 2d 98, 11-14 (E.D.N.Y. 2008). Moreover, the Second Circuit has held that "[i]t is not a violation of the Free Exercise Clause to enforce a generally applicable rule, policy, or statute that burdens a religious practice, provided the burden is not the object of the law but merely the 'incidental effect' of an otherwise neutral provision." *Seabrook v. City of New York*, 210 F.3d 355, *1 (2d Cir. 2000) (quotation omitted). "Where the government seeks to enforce a law that is neutral and of general applicability ... then it need only demonstrate a rational basis for its enforcement, even if enforcement of the law incidentally burdens religious practices." *Fifth Ave. Presbyterian Church v. City of New York*, 293 F.3d 570, 574 (2d Cir. 2002). Here, the provisions of the Vehicle and Traffic Law are neutral and of general applicability, and there is clearly a rational basis for their enforcement. Finally, as Defendants note, there is no evidence to support a finding that Defendants knew of Plaintiff's religious beliefs prior to the traffic stop and arrest.

Accordingly, the Court dismisses Plaintiff's First Amendment claim.

**F.    Qualified Immunity**

"Section 1983 establishes a private right of action for money damages against state officials, acting 'under color' of law, who violate a constitutional or statutory right." *Edrei v. Maguire*, 892 F.3d 525, 532 (2d Cir. 2018) (quoting 42 U.S.C. § 1983). "This 'deter[s] governmental abuse and remed[ies] unlawful governmental transgressions.'" *Id.* (quotation

omitted). "At the same time, 'permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). "To balance the need for accountability and the potential chilling effect, 'the Supreme Court established qualified immunity as an affirmative defense to § 1983 claims.'" *Id.* (quotation omitted). "This defense is designed to 'reduce[ ] the general costs of subjecting officials to the risks of trial' by immunizing them from monetary liability 'based on unsettled rights.'" *Id.* (quoting *Connell v. Signoracci*, 153 F.3d 74, 79 (2d Cir. 1998)).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A court may determine whether a defendant is entitled to qualified immunity without determining whether there was a deprivation of a constitutional right. *See id.* at 236. "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). "[I]f officers of reasonable competence could disagree on [whether the conduct is constitutional], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

As "'existing precedent must have placed the statutory or constitutional question beyond debate[,]' ... '[qualified] immunity protects all but the plainly incompetent or those who knowingly violate the law.'" *Kisela v. Hughes*, 584 U.S. ___, 138 S. Ct. 1148, 1152 (2018) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)). Thus, an officer is entitled to qualified immunity unless "existing precedent 'squarely governs' the specific facts at issue." *Id.* at 1153 (citing *Mullenix v. Luna*, 577

U.S. 7, 13 (2015)). As the Supreme Court has emphasized, clearly established law should not be defined at a high level of generality. *See id.* at 1152. Rather, "the general rules set forth in *Garner* and *Graham* do not by themselves create clearly established law outside an 'obvious case.'" *Id.* at 1153 (quoting *White*, 580 U.S. at 80). "Where constitutional guidelines seem inapplicable or too remote, it does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness." *Id.*

In the alternative, the Court finds that Defendants are entitled to qualified immunity because officers of reasonable competence could disagree on the legality of the actions at issue in this case. Specifically, Defendants were confronted with an individual who refused to pull over to the side of the road when Defendant Thibault activated his emergency lights and siren, who repeatedly refused commands to show his hands and exit his vehicle, and then physically resisted arrest when Defendants forced him from the vehicle. Based on the undisputed evidence as set forth in more detail above, even if this conduct was excessive, Defendants are entitled to qualified immunity. *See Francis v. Vill. of Potsdam*, No. 8:20-cv-1097, 2023 WL 2655677, *5 (N.D.N.Y. Mar. 27, 2023).

Accordingly, the Court grants Defendants' motion for summary judgment on this alternative ground.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 30) is **GRANTED in its entirety**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: November 14, 2023
       Albany, New York

*/s/ Mae A. D'Agostino*
Mae A. D'Agostino
U.S. District Judge